# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18-50046 |
| Patricia A. Roe, ) | |
| ) | Chapter 13 |
| Debtor. ) | |

## ORDER ALLOWING IN PART AND DISALLOWING IN PART FARMERS BANK OF NORTHERN MISSOURI'S NOTICE OF POSTPETITION MORTGAGE FEES, EXPENSES, AND CHARGES

Creditor Farmers Bank of Northern Missouri filed the present Notice of Postpetition Mortgage Fees, Expenses, and Charges on January 14, 2021. Debtor Patricia Roe objected, arguing the notice does not comply with Federal Rule of Bankruptcy Procedure 3002.1 because it contains notice of fees, expenses, and charges the bank incurred more than 180 days before the bank filed its notice.

The court concludes (1) Rule 3002.1 governs; (2) Rule 3002.1(i) acts as an enforcement mechanism for Rule 3002.1(c); and (3) Rule 3002.1(i) affords the court discretion either to preclude the bank from presenting information about the untimely filed notice of fees, expenses, and charges, or to grant other appropriate relief. Thus, the court will exercise its discretion (1) to preclude the bank from presenting as evidence information about the fees, expenses, and charges the bank incurred more than 180 days before filing its notice; and (2) to disallow the fees, expenses, and charges the bank incurred more than 180 days before filing its notice. With respect to the invoice containing fees incurred both before and after the 180-day deadline, the court will allow the bank to present as evidence information from all fees, expenses, and charges listed on that invoice. Ultimately the court concludes

that all fees, expenses, and charges the bank incurred within 180 days of filing the notice, as well as additional fees on the August 31, 2020, invoice, are reasonable and should be allowed. The court, therefore, will allow the bank's request for $9394.60 in fees, expenses, and charges, but disallow the bank's remaining request for $4244.40 in fees, expenses, and charges.

## JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157(a). This matter is statutorily core under 28 U.S.C. § 157(b)(2)(B) and is constitutionally core. The court, therefore, has the authority to hear this matter and make a final determination. No party has contested jurisdiction or the court's authority to make a final determination.

## BACKGROUND

The debtor, Patricia Roe, filed her chapter 13 petition in 2018. In her Schedule D, Roe listed Farmers Bank of Northern Missouri as a secured creditor. The bank's claim was secured by six contiguous parcels of real property, one of which includes Roe's principal residence. Counsel for the bank entered his appearance shortly after Roe filed her case. The court confirmed Roe's 100% chapter 13 plan in May 2018.

In late 2020, Roe filed a motion to sell one parcel of her real estate. Roe intended this sale to produce sufficient proceeds to pay off the bank's loan and satisfy her remaining payment obligations under the plan. The court granted the motion, and Roe completed the sale, leaving her with five parcels including the parcel containing her principal residence. The sale order, which the bank submitted and

Roe approved, reflects that Roe and the bank believed the sale proceeds were sufficient to pay off the bank in full.

A short time later, on January 14, 2021, the bank filed its Notice of Post-petition Mortgage Fees, Expenses, and Charges—the only such notice the bank has filed in this case. The notice included $13,639 in attorney's fees and charges the bank incurred between February 19, 2018, and December 16, 2020. The bank attached invoices in support of all requested fees.

Roe objected, arguing the bank violated Bankruptcy Rule 3002.1 by failing to file and serve its notice of fees, expenses, and charges within 180 days of incurring the fees, as required under Rule 3002.1(c). Because the bank filed the notice on January 14, 2021, the portion of the fees, expenses, and charges the bank incurred on or after July 18, 2020, fall within the 180-day deadline Rule 3002.1(c) imposes. Roe objects to $5705.40 of the fees, expenses, and charges as having been incurred before July 18, 2020.

Further complicating matters, the invoice dated August 31, 2020, contains time entries from both before and after the 180-day deadline. That invoice includes pre-July 18, 2020, time entries totaling $1463.00.

The bank argues that Rule 3002.1 does not apply here because the bank's lien was secured by more than Roe's principal residence and that, even if the rule applies, Rule 3002.1(c) does not specify, and the court should not impose, any consequences for failing to comply with the 180-day deadline.

3

Having outlined the relevant background information, the court will now turn to the merits of the case.

## ANALYSIS

### I.   Rule 3002.1 applies in this case.

As a threshold matter, the court must first determine whether Rule 3002.1 applies. Among other things, Rule 3002.1 requires a claim holder with a security interest in a debtor's principal residence to notify the debtor and the court when the claim holder incurs fees, expenses, and charges that are recoverable against the debtor. The rule further requires the claim holder to provide the required notice within 180 days of incurring the fees, expenses, and charges.

Rule 3002.1 applies to "claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments."[1] Fed. R. Bankr. P. 3002.1(a). The purpose of Rule 3002.1 is to promote transparent and timely notice and prevent the debtor from finding out near the end of the chapter 13 case that the mortgage lender is holding the debtor responsible for years of accumulated legal fees and other charges. *In re Lescinskas*, No. 15-13801, 2021 WL 623698 at *1, 4 (Bankr. D. Mass. Feb. 17, 2021).

The bank argues Rule 3002.1 applies to a lender's request for fees, expenses, and charges exclusively in situations when the lender's claim is secured only by a debtor's principal residence. Here, the bank held liens against six parcels of real

---

[1] There is no dispute that Roe's confirmed plan satisfies the second requirement by providing the trustee will make installment payments postpetition.

estate, one of which includes Roe's principal residence. Consequently, the bank argues Rule 3002.1 does not govern its request for fees, expenses, and charges. The court disagrees.

Our task of resolving this dispute begins with the plain language of the rule. *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989); *Nicolaus v. United States (In re Nicolaus)*, 963 F.3d 839, 843–44 (8th Cir. 2020). Rule 3002.1 applies to claims "secured by a security interest in the debtor's principal residence." Fed. R. Bankr. P. Rule 3002.1(a). To adopt the bank's proposed reading of Rule 3002.1, the court would have to graft the word "only" onto the rule. Because the word "only" is simply not present in Rule 3002.1, by its plain language Rule 3002.1 is not limited to claims secured only by a debtor's principal residence. The court declines to adopt the bank's interpretation because reading Rule 3002.1 as though it includes the word "only" conflicts with the plain language of the rule.

Reading the word "only" into Rule 3002.1(a) would also violate a cardinal principle of statutory construction. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citing *Duncan v. Walker*, 533 U.S. 167, 174 (2001). Rule 3002.1(a) applies to claims "secured by a security interest in the debtor's principal residence." In contrast, 11 U.S.C. § 1322(b)(2) applies to claims other than those "secured ***only*** by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). To read both

5

§ 1322(b)(2) and Rule 3002.1(a) as referring to claims secured only by the debtor's principal residence would render the word "only" in § 1322(b)(2) superfluous—an outcome that violates a cardinal principle of statutory construction. The drafters of Rule 3002.1 undoubtedly were aware of the similar language in 11 U.S.C. § 1322(b)(2)—because it provides a key protection for home mortgage lenders in chapter 13 cases—and would have included the word "only" in Rule 3002.1 if they meant to limit the reach of Rule 3002.1. They did not. And the court will not unilaterally impose such a restriction.

Finally, the court has found no authority suggesting a claim must be secured only by the debtor's principal residence for Rule 3002.1 to apply. Lacking any authority to do so, the court will not read the word "only" into this rule.

For that reason, and because Rule 3002.1(a) does not contain the word "only" and reading it in would violate a principle of statutory construction, the court determines Rule 3002.1 applies if a claim is secured by the debtor's principal residence—even if that claim is also secured by other property. Because, here, the bank's claim is secured by the Roe's principal residence, Rule 3002.1 applies in this case.

## II. Rule 3002.1(i) provides enforcement mechanisms for Rule 3002.1(c).

Having determined Rule 3002.1 governs, the court must next consider what consequences—if any—exist when a claim holder fails to file a timely notice of fees, expenses, and charges under Rule 3002.1(c). The bank argues that because subdivision (c) does not specify a consequence for noncompliance, Rule 3002.1 imposes

6

no consequence. The court disagrees with this reading for two reasons: first, the plain language of Rule 3002.1(i) contravenes this interpretation, and second, the bank's proposed interpretation would render subdivision (c) ineffective.

Rule 3002.1(c) specifies the requirements a claim holder must abide by when filing a notice of fees, expenses, and charges, and, under its plain language, Rule 3002.1(i) provides the enforcement mechanisms for subdivision (c). Rule 3002.1(c) requires a claim holder to file and serve a notice itemizing all fees, expenses, and charges it asserts are recoverable against a debtor. The claim holder must file and serve its notice within 180 days of the date the claim holder incurs the fees, expenses, and charges. Rule 3002.1(i) gives the court discretion to impose consequences when "the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule." Fed. R. Bankr. P. 3002.1(i); *see In re Lescinskas*, 2021 WL 623698 at *4 (stating Rule 3002.1(i) authorizes the court to punish the party who violates Rule 3002.1(c)). The notice is the vehicle for providing the "information as required by subdivision . . . (c)." Thus, the bank's failure to timely file the notice is, by extension, a failure to provide the information subdivision (c) requires. *Contra In re Salazar*, No. 14-34691 2016 WL 6068819 (Bankr. S.D. Tex. Oct. 14, 2016) (concluding Rule 3002.1(i) only references the itemization of the charges and thus untimely notice cannot qualify as failing to provide the information). Therefore, by its plain language, Rule 3002.1(i) provides enforcement mechanisms for Rule 3002.1(c).

The bank's proposed reading of Rule 3002.1(c) as having no consequences for violation would render the rule ineffective—an outcome the drafters could not have intended. It would be odd, indeed, to adopt a rule with its intended purpose of preventing these late-in-the-case surprises but provide no consequences for noncompliance. And, as discussed above, Rule 3002.1(i) clearly provides the consequences the court may impose when a party violates Rule 3002.1(c).

### III. The court will exercise its discretion to impose consequences under Bankruptcy Rules 3002.1(i)(1) and (2).

Because the bank failed to file timely notice of a portion of its fees, expenses, and charges under Rule 3002.1(c), Rule 3002.1(i) affords the court discretion to impose consequences against the bank under either or both Rule 3002.1(i)(1) and (2). Here, the court determines it is appropriate to exercise its discretion to impose consequences against the bank. The court will preclude the bank from presenting as evidence $4244.40 in fees, expenses, and charges from the notice as "omitted information" under Rule 3002.1(i)(1). And, even if the untimely information does not constitute "omitted information," the court will disallow the bank's fees, expenses, and charges it incurred more than 180 days before the notice as "other appropriate relief" under Rule 3002.1(i)(2).

*A. The court will exercise its discretion under both Rule 3002.1(i)(1) and (2).*

Under the facts of this case, it is appropriate for the court to exercise its discretion to impose consequences against the bank under both Rule 3002.1(i)(1) and (2). The drafters enacted Rule 3002.1 to prevent a creditor from unfairly surprising a debtor, near the end of a chapter 13 case, with years of accumulated legal fees and

8

other charges the debtor must pay.  Here, Roe proposed to sell one parcel of real estate to fully satisfy the bank's claim and pay off her Chapter 13 case.  After preparing and submitting a sale order stating the sale would satisfy the bank's claim in full, the bank filed the present notice requesting an additional $13,639 in fees, expenses, and charges.  The late-filed notice made the sale proceeds insufficient to pay off the bank's claim and Roe's case.  Because the bank's late-filed notice unfairly surprised Roe at the end of her case—which is precisely the situation the drafters sought to prevent when they enacted the rule—the court determines it is appropriate to exercise its discretion to prevent the bank from presenting as evidence information about $4244.40 of the late-filed fees, expenses, and charges under Rule 3002.1(i)(1) and disallow those late-filed fees, expenses, and charges under Rule 3002.1(i)(2).

> B. *The court will exercise its discretion under Rule 3002.1(i)(1) to preclude the bank from presenting the untimely information about the costs and fees incurred outside the 180-day deadline.*

When a claim holder fails to file its notice as Rule 3002.1(c) requires, Rule 3002.1(i)(1) gives the court discretion to "preclude the [claim] holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case."  Fed. R. Bankr. P. Rule 3002.1(i)(1).  But under the safe harbor provision in Rule 3002.1(i)(1), the court may not preclude the claim holder from presenting the omitted information if the court "determines that the failure was substantially justified or is harmless."  *Id.*

Here, the bank has presented no evidence showing its failure to timely notify Roe of the fees was substantially justified or harmless.  Nor has the court has found

9

any evidence suggesting that was the case. Thus, the bank has not triggered the safe harbor provision in Rule 3002.1(i)(1). As a result, the court has discretion to preclude the bank from presenting the information as evidence in any contested matter or adversary proceeding if the unfiled notices constitute "omitted information" under subdivision (i)(1).

Rule 3002.1(c) required the bank to file notices of fees, expenses, and charges within 180 days of incurring them. Because the bank appears to have continuously worked on this case since the petition date, the court would have expected the bank to file notices of fees, expenses, and charges approximately every 180 days. Instead, after preparing and submitting a sale order leading Roe and the court to believe the sale would fully satisfy the bank's claim (including fees, expenses, and charges), the bank filed one notice—nearly three years into the case—seeking fees in excess of the sale proceeds. It is no wonder, then, that Roe and her counsel were surprised and objected to the notice.

The bank filed its notice of fees, expenses, and charges on January 14, 2021. Thus, under Rule 3002.1(c), the bank provided timely notice with respect to any fees, expenses, and charges it incurred after July 18, 2020 (the date 180 days before January 14, 2021).

The bank attached to its notice seventeen invoices spanning February 19, 2018, to December 31, 2020. Of the attached invoices, thirteen did not comply with the 180-day deadline set forth in Rule 3002.1(c). Additionally, one invoice—the

August 31, 2020 invoice—included two entries containing fees preceding the July 18, 2020 deadline (the fees the bank incurred on July 16 and 17, 2020).

The following table reflects the thirteen untimely invoices. The dates listed in the third column are the latest dates the bank could have timely filed its notices with respect to each invoice. The court calculated the dates in the third column (the "Due Dates") by adding 180 days to each invoice date.

| INVOICE DATE | AMOUNT | DUE DATES |
|---|---|---|
| 3/30/2018 | $773.10 | 9/26/2018 |
| 4/30/2018 | $731.50 | 10/27/2018 |
| 5/31/2018 | $1084.30 | 11/27/2018 |
| 6/29/2018 | $115.00 | 12/26/2018 |
| 10/31/2018 | $385.00 | 4/29/2019 |
| 4/30/2019 | $115.50 | 10/27/2019 |
| 5/31/2019 | $269.50 | 11/27/2019 |
| 10/31/2019 | $77.00 | 4/28/2020 |
| 11/29/2019 | $192.50 | 5/27/2020 |
| 12/31/2019 | $77.00 | 6/28/2020 |
| 1/31/2020 | $192.50 | 7/29/2020 |
| 2/28/2020 | $77.00 | 8/26/2020 |
| 6/30/2020 | $154.00 | 12/27/2020 |

This table reflects the bank did not timely notify Roe and the court of the $4244.40 in fees listed on the invoices dated March 30, 2018, to June 30, 2020.

With respect to any notices the bank did not file within 180 days of incurring the fees, the court will treat the information in those notices as "omitted information" under Rule 3002.1(i)(1). Although the bank did eventually file the notices—albeit untimely and without justification for the lateness—because the bank failed to file the notices as of their due dates, the information became "omitted information" on those dates. Thus, the court will exercise its discretion to preclude the bank from

presenting any omitted information from the thirteen invoices for which there was no timely notice.

With respect to the August 31, 2020 invoice, which contains time entries from both before and after July 18, 2020 (180 days before the bank filed its notice), the court declines to impose any consequence under 3002.1(i). These time entries range from July 16, 2020, to August 13, 2020. The court is aware of, and generally agrees with, cases determining that a creditor incurs fees on the date the professional renders the services. *See In re Raygoza*, 556 B.R. 813, 819–20 (Bankr. S.D. Tex. 2016) (determining a party "incurs" an expense when a professional preforms the relevant legal services). But in reality, most professionals do not invoice on a daily basis. In this case, the bank's counsel consistently invoiced monthly for services in months when it provided services. Under these circumstances, the court believes it is appropriate to exercise the discretion provided under Rule 3002.1(i) to permit the bank to present information for the two time entries from July 16 and 17, along with all subsequent time entries, in support of the bank's request for fees, expenses, and charges.

### C. Alternatively, the court will disallow the untimely fees, expenses, and charges as "other appropriate relief" under Rule 3002.1(i)(2).

Even if the information does not constitute "omitted information," the court still has discretion to disallow the fees, charges, and expenses the bank incurred outside the 180-day deadline. Rule 3002.1(i)(2) gives the court discretion to "award other appropriate relief, including reasonable expenses and attorney's fees" when a claim holder violates subsection (c). Among other appropriate relief the court could

12

award under Rule 3002.1(i)(2), the court may exercise its discretion to disallow the bank's fees, expenses, and charges for which the bank did not file and serve a timely notice. *See In re Lescinskas*, No. 15-13801, 2021 WL 623698 at *5 (Bankr. D. Mass. Feb. 17, 2021) (determining, under similar facts, Rule 3002.1(i)(2) authorized the court to limit a claim holder's recovery to attorney's fees and other charges it incurred during the 180-day period prior to the date of the notice).

Here, the bank incurred fees, expenses, and charges over nearly a three-year period but waited until recently to file its notice detailing those fees, expenses, and charges. Because the bank was required to file its notices within 180 days from incurring the fees, expenses, and charges, any attached invoices detailing fees incurred before July 18, 2020, were not timely. Thus, for the reasons set forth in *Lescinskas*, the court will exercise its discretion to disallow all fees, expenses, and charges the bank incurred prior to July 16, 2020—thus giving the bank the benefit of two extra days for the reasons set forth in section III.B above.

## IV. The court determines the bank may recover $9394.60 in fees, expenses, and charges.

Section 506(b) permits an over-secured creditor to recover any reasonable fees, costs, or charges provided for under the agreement giving rise to the claim.[2] To recover attorney's fees, costs, and other charges, an over-secured creditor must establish that: (1) is claim is secured by property with a value in excess of the amount

---

[2] Because the bank's claim is secured by more than just Roe's principal residence, the anti-modification provision in 11 U.S.C. § 1322(b)(2) does not apply. *See* 11 U.S.C. § 1322(b)(2) ("the plan may modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence"). Thus, the bank's right to recover its attorney's fees stems from 11 U.S.C. § 506(b) and its underlying loan documents.

of its claim; (2) the fees, costs, and other charges it requests are reasonable; and (3) the agreement giving rise to the claim authorizes the secured creditor to recover the fees, costs, and charges. 11 U.S.C. § 506(b); *White v. Coors Distributing Company (In re White)*, 260 B.R. 870, 880 (B.A.P. 8th Cir. 2001). As the party seeking to recover the fees, the bank bears the burden of proof on each of these elements. *In re Okafor*, 595 B.R. 903, 909 (Bankr. W.D. Mo. 2018); *In re Woods Auto Gallery, Inc.,* 379 B.R. 875, 885 (Bankr. W.D. Mo. 2007).

No party disputes the bank is over-secured, thus the first element is not at issue. And no party disputes that the loan documents authorize the bank to recover attorney's fees, costs, and expenses the bank incurred in enforcing its rights under the loan documents, liquidating its collateral, and collecting the amounts due under the loan documents, so the third element is not at issue either.

But the question remains: are the attorney's fees reasonable? The bank relies on the invoices attached to the notice as the only evidence to prove its requested fees are reasonable. Roe does not dispute their reasonableness. Nevertheless, the court has an independent duty to review a creditor's fees for reasonableness under § 506(b).

Absent the precluded evidence about the amounts of the bank's requested fees and how the bank incurred them, the court cannot determine whether those fees are reasonable. Thus, the court cannot determine the reasonableness of any fees the bank incurred before July 18, 2020. Because the court cannot make this determination under § 506(b), the bank cannot recover $4244.40 of its requested fees,

14

expenses, and charges—which is the portion the bank incurred more than 180 days before the bank filed its notice.

The court must also determine the reasonableness of the timely-filed fees, expenses, and charges (including the fees incurred on July 16, 2020, and July 17, 2020). After reviewing the invoices attached to the notice and, based on court's experience and knowledge of the hourly rates charged by both bankruptcy and non-bankruptcy attorneys in the Kansas City area, the court determines that $9394.60 of the requested fees, expenses, and charges are reasonable, and are thus recoverable by the bank.

## CONCLUSION

For the reasons explained above, the court ALLOWS Farmers Bank's notice of $9394.60 in fees, expenses, and charges, but the court DISALLOWS Farmers Bank's notice of $4244.40 in fees, expenses, and charges. The chapter 13 trustee shall disburse $9394.60 to Farmers Bank for its allowed fees, expenses, and charges.

Dated: 7/13/2021   /s/ Brian T. Fenimore_____
United States Bankruptcy Judge